IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:09-CV-482-D

| | | |
|---|---|---|
| CAROL DIXON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Carol Dixon ("plaintiff") challenges the final decision of defendant

Commissioner of Social Security ("Commissioner") partially denying her application for a period

of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on

the grounds that she was not disabled prior to 1 April 2007, but became disabled on that date.[1] The

case is before the court on the parties' respective motions for judgment on the pleadings (D.E. 16,

28). Plaintiff's motion is supported by a memorandum (D.E. 16-1 at pp. 1-23) with exhibits (D.E.

16-1 at pp. 24-45) and a reply memorandum (D.E. 27 at pp. 1-7) with exhibits (D.E. 27 at pp. 8-41).[2]

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

[2] Plaintiff's filings are not in full compliance with local practice and applicable requirements of the court . Specifically, contrary to local practice, she filed her supporting memorandum as an exhibit to her motion rather than as a free-standing document. In violation of CM/ECF requirements, she did not file exhibits as separate documents and filed duplicate exhibits (*e.g.*, D.E. 16-1 at pp. 24-30 and D.E. 27 at pp. 28-33). *See* CM/ECF Policy Manual § L.2(a), (b). Deficiencies such as these impede court review. The court also notes that while the court permitted plaintiff to file a reply memorandum in this case, replies are not favored (*see* Local Civ. Rule 7.1(f)(1)) and, in fact, the initial notice on briefing in this case did not provide for a reply (*see* D.E. 10). Plaintiff's counsel has previously been the subject of a deficiency notice with respect to the proper filing of exhibits (*see* case no. 5:08-CV-288-FL, 17 Feb. 2009 Def. Notice). Her failure to properly file the exhibits in this case—with respect to both the initial and reply memoranda—is particularly inexcusable. The court will not tolerate repeated non-compliance by plaintiff's counsel, or any other attorney, with the court's filing practices and requirements.

The Commissioner's motion is supported by a memorandum (D.E. 21).[3] The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* Minute Entry at 16 Sept. 2010). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

# I. BACKGROUND

## A.    Case History

Plaintiff filed an application for DIB on 15 February 2002, alleging a disability onset date of 1 February 2002 due to back problems. Transcript of Proceedings ("Tr.") 45, 55. Plaintiff later amended her disability onset date to 16 April 2001. *Id.* 94. The claim was denied through the administrative law judge ("ALJ") hearing level (*see id.* 18-26), the Appeals Council denied review (*id.* 6-9), plaintiff sought review in this court (see *Dixon v. Astrue*, No. 5:06-CV-77-JG (E.D.N.C.)), and the court remanded the case for further proceedings (*see id.* 627-45)[4] on 13 September 2007.

In the meantime, on 7 April 2006, plaintiff filed an additional application for DIB and an application for SSI (*id.* 1180-84). *See id., e.g.*, 613. In its order remanding the case to an ALJ for a second hearing pursuant to the court's remand, the Appeals Council ruled that the 7 April 2006 application for DIB was a duplicate of her prior claim, and ordered that the DIB claims files be associated and a new decision on them be issued by the ALJ. *Id.* 672. The Appeals Council also

---

[3] Although the briefing notice in this case (D.E. 10 at p. 1 ¶ 3) directed that the Commissioner's memorandum conform to Local Civil Rule 7.2, it exceeded the 30-page limit established by that rule. *See* Local Civ. Rule 7.2(e). In its discretion, the court elected to consider the Commissioner's memorandum, rather than striking it or taking other action, notwithstanding this deficiency. Further non-compliance will be met with appropriate action, which could include sanctions.

[4] This is the court's remand decision (D.E. 49) in *Dixon v. Astrue*, No. 5:06-CV-77-JG.

2

directed the ALJ to consider whether the SSI claim should be consolidated with the current claims. *Id.*

A hearing was held before the same ALJ who had heard the case pursuant to the remand on 9 May 2008. *Id.* 1189-1251. In a written decision dated 15 August 2008, the ALJ found that plaintiff was not disabled prior to 1 April 2007, but became disabled on that date. *Id.* 624 ¶ 13. [5] The ALJ also consolidated plaintiff's SSI claim with her DIB claims. *Id.* 613. The decision therefore applied to both her DIB and SSI claims. *See id.* 624.

Plaintiff timely requested review by the Appeals Council. *Id.* 607. The Appeals Council denied the request for review on 8 September 2009. *Id.* 554-56A. At that time, the decision of the ALJ became the final decision of the Commissioner. *Id.* 555; *see* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed the complaint (D.E. 3) in this action seeking judicial review on 12 November 2009, pursuant to 42 U.S.C. § 405(g).

### B.    Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

---

[5] For ease of reference, the court has included in citations to the ALJ's decision the numbered paragraph in which the cited material is located if text from more than one numbered paragraph appears on the page referenced.

3

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work ["PRW"]. If you can still do your [PRW], we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

4

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

Relevant at this step are the Medical-Vocational Guidelines or so-called grid rules, 20 C.F.R. pt. 404, subpt. P, app. 2. They indicate whether an individual is "disabled" or "not disabled" based on the exertional level of work the individual is found to be able to perform as part of his RFC and his vocational profile, comprised of his age, education, and past work experience. *Id.* § 200.00(a). The decision of "disabled" or "not disabled" specified in the grid rules reflects an administrative determination as to whether sufficient jobs exist in the national economy for the individual given his exertional level and vocational profile. *Id.* § 200.00(b).

If an individual can perform all or substantially all of the exertional demands at a given exertional level, the grid rule directs the conclusion on disability—that is, the conclusion of "disabled" or "not disabled" indicated by the rule has controlling effect. Soc. Sec. Ruling 83-11, 1983 WL 31252, at *1 (1983).[6] If the individual cannot perform all or substantially all the exertional demands or has non-exertional limitations, the grid rules are used as a framework for decision making, subject to certain exceptions. *See* Soc. Sec. Ruling 83-12, 1983 WL 31253, at *1 (1983); Soc. Sec. Ruling 83-14, 1983 WL 31254, at *1 (1983).

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523,

---

[6] Rulings are interpretations of the Act by the Social Security Administration that, while lacking the force of law, are entitled to deference unless they are clearly erroneous or inconsistent with the law. *Pass*, 65 F.3d at 1204 n.3 (citing *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir.1989)).

416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. 20 C.F.R. §§ 404.1523, 416.923.

## C.   Findings of the ALJ

Plaintiff was 45 years old on the alleged onset date of disability[7] and was 53 years old on the date of the remand administrative hearing. Tr. 622 ¶ 8. Plaintiff had PRW experience as a data entry clerk, accounting clerk, and general clerk. *Id.* 622 ¶ 7. At the 9 May 2008 hearing, she and her daughter testified to the effect that plaintiff's physical and mental impairments were disabling. *See id.* 620-21 ¶ 5.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 615 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments which were severe withing the meaning of the Regulations, 20 C.F.R. §§ 404.1520(c) and 416.920(c): degenerative disc disease; adjustment disorder with depressed mood; hypertension; fibromyalgia; rotator cuff tendonitis; and personality disorder. Tr. 615 ¶ 3. At step three, however, the ALJ found that plaintiff's impairments did not meet or medically equal one of the listed impairments in appendix 1 to 20 C.F.R. part 404, subpart P. *Id.* 619 ¶ 4.

---

[7] In his decision, the ALJ erroneously gives 1 February 2002 as the alleged onset of disability, instead of 16 April 2001. *See* Tr. 613. He therefore erroneously finds that plaintiff was 46 years old on the alleged onset of disability. *See id.* 622 ¶ 8. The error is not material. It does not change the age category (*i.e.*, younger individual) in which plaintiff falls under the Regulations (20 C.F.R. §§ 404.1563(c), 416.963(c)). In addition, there is no basis for concluding that the ALJ would have found plaintiff to have a different RFC during the period from 16 April 2001 to 1 February 2002 than during the rest of the pre-1 April 2007 period.

6

The ALJ then determined that prior to 1 April 2007, plaintiff had the RFC to perform light work,[8] including specifically lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently; standing and walking six hours in an eight-hour day and sitting six hours in an eight-hour day; and performing postural activities, such as stooping, crouching, kneeling, and crouching. *Id.* 620 ¶ 5. He further found that in the same period she was limited to simple, routine, and repetitive tasks ("SRRTs") in a non-production environment and jobs not requiring complex decision making, constant change, or dealing with crisis situations. *Id.* Based on this RFC, the ALJ found at step four that plaintiff could not perform her PRW for the period prior to 1 April 2007. *Id.* 622 ¶ 7.

For the period after 1 April 2007, the ALJ found that plaintiff had the RFC to perform only unskilled sedentary work.[9] *Id.* 622 ¶ 6. He determined that the objective evidence of plaintiff's mental impairment decreased her ability to perform work activity. *Id.* Based on this RFC, the ALJ found at step four that plaintiff could not perform her PRW after 1 April 2007. *Id.* 622 ¶ 7.

At step five, for the period prior to 1 April 2007, the ALJ found that there were a significant number of jobs in the national economy that plaintiff could have performed. *Id.* 623 ¶ 11. These included the jobs of mail clerk, photocopy machine operator, and shipping and receiving weigher,

---

[8] The Regulations define "light work" as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[9] The Regulations define "sedentary work" as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

as described in the *Dictionary of Occupational Titles* (4th ed., rev. 1991) ("*DOT*").[10] *Id.* In making this determination, the ALJ accepted the testimony of a vocational expert ("VE") specifying these jobs as among those that could be performed by a hypothetical person purportedly having the same capabilities as those of plaintiff. *Id.*

At step five, for the period after 1 April 2007, the ALJ determined that the Medical-Vocational Guidelines were controlling. *See id.* 623-24 ¶ 12. Specifically, given her RFC to perform a full range of unskilled sedentary work and the vocational factors of her age (*i.e.*, younger individual category) and education (*i.e.*, at least a high school education and able to communicate in English), the ALJ found Medical-Vocational Rule 201.14 to be applicable. *Id.* 624 ¶ 12; *see also id.* 622 ¶¶ 8, 9. It directs a finding of "disabled." *Id.* 624 ¶ 12. The ALJ concluded that plaintiff was not disabled prior to 1 April 2007, but became disabled on that date and has continued to be disabled through the date of the decision. *Id.* 624 ¶ 13.

## III. DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record[11] and whether the appropriate legal standards were applied. *See Richardson v. Perales*,

---

[10] The *DOT* is a publication of the U.S. Department of Labor which provides a description of key attributes of numerous jobs. A copy is posted at http://www.oalj.dol.gov/libdot.htm. The Regulations permit the Commissioner to take administrative notice of the information in the *DOT* in making disability determinations. 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). As stated by the vocational expert at the hearing, the *DOT* codes for the identified jobs are as follows: mail clerk, *DOT* code 209.687-026; photocopy machine operator, *DOT* code 207.685-014; and shipping and receiving weigher, *DOT* code 222.387-074. *See tr.* 1240.

[11] The second unnumbered page of the index to the record contains a notation stating that "Exhibit 24E is not available for inclusion." Numbered page 5C of the index identifies that exhibit as "Statement of Cynthia M. Curring [*sic*]—Attorney, dated 05/23/2008 " and indicates that it is 2 pages in length and is not available (*i.e.*, "N/A"). Plaintiff requests in her memorandum (Plf.'s Mem. 22) that the exhibit be included in the record and attached a purported copy

402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g., Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). In addition, the court may not make findings of fact, re-visit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King*, 599 F.2d at 599. A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an

---

of it to the memorandum (D.E. 16-1 at pp. 44-45 ). In his memorandum, the Commissioner does not object to inclusion of the exhibit as proposed by plaintiff. It will therefore be recommended that the copy of the exhibit attached to plaintiff's memorandum be ordered included in the record.

9

adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B.    Overview of Plaintiff's Contentions

Plaintiff does not, of course, contest the ALJ's determination that she became disabled on 1 April 2007 and remained disabled through the date of his decision. She does, however, contest the determination that she was not disabled before 1 April 2007. She contends that the ALJ erred and his decision should be reversed because, in connection with this portion of his decision, he: (1) failed to give proper weight to the opinion of her primary care physician; (2) failed to apply the correct standard for evaluating plaintiff's pain; (3) failed to find that plaintiff's spinal impairments met Listing 1.04; (4) purportedly applied the grid rules as to the pre-1 April 2007 period; (5) limited plaintiff's presentation of her opening statement at the hearing; (6) limited plaintiff's cross-examination of the VE at the hearing; (7) provided an incomplete hypothetical to the VE; and (8) relied on the availability of jobs plaintiff lacked the physical capacity to perform. Each of these contentions is examined in turn below.

### C.    Weight Given to Primary Care Physician's Opinion

Plaintiff argues that the ALJ failed to give sufficient weight to the opinions of her primary care physician since September 2000, Andrew Drabick, M.D., as expressed in medical source statements dated 10 August 2002 (tr. 234-36) and 29 April 2007 (*id.* 1043-48),[12] and a letter dated 7 May 2008 (*id.* 1102-08). Instead, she contends, the ALJ gave too much weight to the opinions of a non-examining state agency consulting psychologist, Gordon J. Rankart, Psy. D., as set forth in a mental RFC assessment form dated 8 August 2006 (*id.* 901-04). The court disagrees.

---

[12] The record identifies the date of this statement as 27 April 2007. Tr. 5D, 1043.

There is no question that the opinion of a treating physician must generally be given great weight. *See, e.g., Mitchell*, 699 F.2d at 187. The underlying rationale is that the opinion of a treating physician "reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Id.*

However, there must be appropriate support in the record to warrant special deference to the treating physician's opinion. Specifically, the Regulations provide that controlling weight be given to a treating source's opinion only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other evidence in the case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *accord* Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (2 July 2006). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

### 1. 10 August 2002 Statement

Turning first to Dr. Drabick's 10 August 2002 medical source statement, the ALJ discusses it expressly in his decision. Tr. 619 ¶ 3. He recites Dr. Drabick's findings that plaintiff had lumbar degenerative disc disease, osteoarthritis of the cervical spine, and peripheral edema with severe low back pain, right-sided sciatica, and chronic neck pain, and that she could not lift or carry or sit or stand for prolonged periods of time. *Id.* But the ALJ also noted that the form was completed only four months following spinal surgery plaintiff had and that in subsequent medical records plaintiff's back and neck pain were improved. *Id.* The ALJ also notes that Dr. Drabick himself states that plaintiff had done well following her surgery, that her neck pain had improved with medication and

11

chiropractic care, that stress and anxiety did not affect her impairments, and that she could expect substantial improvement in her condition. *Id.*

In ultimately finding that plaintiff had the ability to perform a wide range of light work, the ALJ obviously did not adopt Dr. Drabick's opinion that plaintiff could not lift or carry or sit or stand for a prolonged period. The ALJ's comments regarding Dr. Drabick's statement provide a clearly lawful explanation for his not adopting this opinion.

A finding by Dr. Drabick that the ALJ did not reference was that plaintiff's impairments impacted her ability to perform any work activity on a prolonged and/or regular basis. *Id.* 235. There is, of course, no requirement that an ALJ discuss every finding by a physician. *See, e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989). This finding is, in any event, redundant of the more specific findings that plaintiff could not lift or carry or sit or stand for prolonged periods. To the extent that it is an opinion that plaintiff is disabled, the ALJ need not give it any special weight based on its source because it is on a matter reserved to the Commissioner for determination. *See* 20 C.F.R. §§ 404.1527(e)(1), (3), 416.927(e)(1), (3).

### 2. 29 April 2007 Statement

The ALJ also discusses Dr. Drabick's 29 April 2007 medical source statement. Tr. 619 ¶ 3, 622 ¶ 5. He noted that plaintiff's diagnoses included lumbar disc disease, status-post surgery, chronic cervicalgia/spondylosis of the spine, fribromyalgia, gastritis, and hypertension. *Id.* 619 ¶ 3, 1043. He also reviewed the symptoms Dr. Drabick found plaintiff to have: neuroanatomic distribution of pain, limitation of motion of the spine, need to change position more than once every two hours, and chronic non-radicular pain and weakness. *Id.* 619 ¶ 3, 1043.

12

At a later point in his decision, the ALJ discusses to the finding by Dr. Drabick that plaintiff could do no lifting. *Id.* 622 ¶ 5, 1044 nos. 5, 6. The ALJ states that he was giving that opinion only "some weight" for two reasons. *Id.* 622 ¶ 5. One was that the opinion contradicts the statement by Dr. Drabick in his note of a 13 February 2007 office visit with plaintiff that plaintiff's allegations of pain seemed out of proportion to the objective findings on the MRI that had been taken of her cervical spine. *Id.* 622 ¶ 5; *see also id.* 621, 1112. The other reason is that the opinion is contradicted by plaintiff's hearing testimony. *Id.* 622 ¶ 5. At her initial ALJ hearing, she testified to, among other things, that she had been told by several doctors that she could lift up to 10 pounds. *Id.* 537.

Plaintiff does not expressly challenge this analysis by the ALJ. Rather, she focuses on the ALJ's failure to adopt or even discuss the ratings Dr. Drabick made in his 29 April 2007 statement regarding the severity of the functional limitations imposed on plaintiff by her mental impairments. *See id.* 1045. He rated her based on the four criteria provided for in Listing 12.00C and, with minor deviations, using the associated rating scale provided for by the Regulations.[13] Thus, Dr. Drabick rated plaintiff as having mild restrictions of activities of daily living; marked difficulty in maintaining social functioning; deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner; and repeated episodes of decompensation. *Id.* 1046. The ALJ rated plaintiff as having mild restrictions of activities of daily living; moderate

---

[13] The four functional areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. Listing 12.00C; *see also* 20 C.F.R. §§ 404.1520a(c)(3), 416.1520a(c)(3). The first three functional areas are rated on a five-point scale: none, mild, moderate, marked, and extreme. *See* 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). A four-point scale is used to rate the fourth functional area: none, one or two, three, and four or more. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).

difficulty in maintaining social functioning; moderate difficulty in maintaining concentration, persistence, or pace; and no episodes of decompensation. *Id.* 620 ¶ 4.

The ALJ did not err by omitting discussion of Dr. Drabick's ratings from his decision. The ALJ's own ratings and his discussion of the evidence in the case made clear the weight he accorded those ratings. Again, it is not required that the ALJ discuss every piece of evidence.

The ALJ also did not err by rating plaintiff differently than Dr. Drabick. There is obviously no issue of the ALJ's deviating from Dr. Drabick's ratings with respect to activities of daily living because the ALJ's rating is the same as Dr. Drabick's. Regarding episodes of decompensation, plaintiff cites to no evidence in the record showing any such episodes within the meaning of Listing 12.00C.4 (which requires, *e.g.*, that they last at least two weeks each), let alone repeated episodes, and the court is aware of none.

As can be seen, Dr. Drabick did not use one of the ratings provided for by the Regulations (*i.e.*, none, mild, moderate, marked, and extreme) to describe his assessment of plaintiff's limitations in the area of concentration, persistence, or pace, but the court will assume the rating is equivalent to marked. Substantial evidence supports the ALJ's lower rating of moderate in this area, as well as in the area of social functioning.

For one, Dr. Drabick is not a pyschiatrist. This fact justifies according his mental impairment ratings less weight. *See* 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). In addition, Dr. Drabick did not support his ratings with the detailed checklist of work-related limitations included in the medical statement form he used. *See* tr. 1047. Instead, the handwritten notation "NA" is written at the top of the page on which the checklist appears, presumably indicating that the checklist is "not

14

applicable." *Id.* The omission of this detail also provides a basis for giving Dr. Drabick's ratings less weight than would otherwise be the case. *See* 20 C.F.R. §§ 404.1527(d)(3) , 416.927(d)(3).

In addition, there is an issue of consistency of Dr. Drabick's ratings. As noted by the ALJ, Dr. Drabick had previously found that plaintiff's cervical pain was disproportionate to the objective findings on an MRI. Tr. 621. In an insurance disability form dated 28 August 2001, Dr. Drabick found that plaintiff was not disabled form performing her then current job or any other job and could return to work. *Id.* 158. In addition, as the ALJ recited, Dr. Drabick found in his 10 August 2002 medical source statement that stress and anxiety did not affect plaintiff's impairments. *Id.* 235, 619. He also said in that statement that plaintiff's memory and concentration were not affected by her impairments. *Id.* 235. Lack of consistency of a source's opinions with his other findings can also justify attributing the opinion less weight. *See* 20 C.F.R. §§ 404.1527(d)(4) , 416.927(d)(4).

There is also evidence from other sources that contradicts Dr. Drabick's ratings. Without attempting to review all such evidence, the court notes that it includes the finding at plaintiff's visit to Wake County Mental Health Services ("Wake Mental Health") on 30 April 2004 that she was "not depressed, but frustrated." Tr. 937. In a diagnostic report on plaintiff prepared on 16 June 2004, Wake Mental Health staff psychiatrist Drew Bridges, M.D. noted that plaintiff did not appear sad or anxious, although she did seem to have some physical pain. *Id.* 927. He found intact her ability to think, calculate, recall, and use judgment, and diagnosed her with an adjustment disorder with depressed mood. *Id.* 928. He gave her a Global Assessment of Functioning ("GAF") score of 50[14]

---

[14] The GAF scale measures a person's overall psychological, social, and occupational functioning. Am. Psych. Assn., *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000) ("DSM-IV-TR"). Selected GAF scores have the following meanings:

80 - 71 If symptoms are present they are transient and expectable reactions to psychosocial stressors; no more than slight impairment in social, occupational, or school functioning.

15

and continued the counseling she was then receiving, but prescribed no medication. *Id.* 928-29. By 30 September 2004, before expiration of six months (again, the required durational period for disability under the Regulations) after her initial visit to Wake Mental Health, Dr. Bridges determined plaintiff to be stable and discharged her from therapy with a GAF score of 71. *Id.* 926.

Although plaintiff began taking medication for depression in February 2005, Dr. Bridges evaluated her as engaged fairly well at a visit on 21 July 2005 and gave her a GAF score of 50. *Id.* 913. About two months later, on 29 September 2005, he noted that due to the medication she was not as depressed as before. *Id.* 909.

The mental RFC assessment by consulting psychologist Rankart also supports the ALJ's ratings. Indeed, Rankart assigned to plaintiff the same ratings that the ALJ did. The ALJ indicated that he considered Rankart's assessment, and the Regulations enabled the ALJ to properly accord it some weight. *Id.* 621-22; *see* 20 C.F.R. § 404.1527(f), 416.927(f). But plaintiff's argument that the ALJ simply deferred to Rankart's assessment without due consideration of Dr. Drabick's is belied by the other evidence supporting the ALJ's ratings, a portion of which is reviewed above.

Plaintiff contends that Dr. Drabick's opinions are consistent with those of psychiatrist Michael Golding, M.D. and psychotherapist Eureka C. Daye, as set out in their medical source statements dated 8 May 2008. *See* Tr. 1083-89, 1090-96. Both give plaintiff a GAF score of 35. *Id.* 1084, 1091. But they did not begin treating plaintiff until late 2007, after the 1 April 2007 date

---

70 - 61 Some mild symptoms OR some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships.

60 - 51 Moderate symptoms OR moderate difficulty in social, occupational, or school functioning in social, occupational, or school functioning.

50 - 41 Serious symptoms OR any serious impairment in social, occupational, or school functioning.

DSM-IV-TR 34.

16

by which the ALJ determined plaintiff had become disabled, and there is no indication that their opinions are intended to be retrospective. *See id.* 1083, 1090. For this and the other reasons stated, plaintiff's challenge to the legal sufficiency of the ALJ's evaluation of Dr. Drabick's 29 April 2007 medical source statement fails.

### 3. 7 May 2008 Letter

So too does her argument that the ALJ erred by not expressly discussing Dr. Drabick's 7 May 2008 letter. The non-discussion of the letter is supported, in part, by the general principle that an ALJ is not required to discuss every piece of evidence.

Discussion of the letter was further obviated by its largely duplicating information already in the record. The initial portion of the letter consists of a summary of plaintiff's medical history, information that is obviously not new.

The remainder of the letter consists primarily of Dr. Drabick's opinions. Almost all these opinions are simply restatements in an organized, narrative form of the findings set out in his 29 April 2007 statement. For example, the bullet point listing of symptoms of depression in the letter (at *id.* 1105) replicates the checklist of such symptoms in the statement (at *id.* 1046). Similarly, the severity ratings in the letter (at *id.* 1106) correspond to those in the statement (at *id.* 1046). Likewise, the finding in the letter (at *id.* 1107) that plaintiff is disabled is reflected in Dr. Drabick's comment in the statement (at *id.* 1048) that he was supportive of plaintiff's disability. Even a brief comparison of the two documents shows the comprehensiveness of the duplication.

There are, nonetheless, two new opinions in the letter. One is that plaintiff's impairments meet or equal Listing 1.04. *Id.* 1107. He does not specify which section of Listing 1.04 he believes plaintiff's impairments meet or equal. In any event, the determination on a listing is one reserved

17

to the Commissioner and the opinion of a physician on it is not entitled to special weight because of its source. *See* 20 C.F.R. §§ 404.1527(e)(2), (3), 416.927(e)(2), (3). The same is true, of course, of Dr. Drabick's reiterated opinion on the ultimate issue of disability. *See* 20 C.F.R. §§ 404.1527(e)(1), (3), 416.927(e)(1), (3). Moreover, substantial evidence supports the ALJ's finding that plaintiff's impairments do not meet or equal Listing 1.04A, the portion of that listing plaintiff pursued in her appeal. The record is clear, in the absence of express discussion, that the ALJ gave Dr. Drabick's opinion on Listing 1.04 little weight and why.

The other new opinion is that plaintiff's limitations relate back to April 2001, including the opinions on Listing 1.04 and disability. (*See* tr. 1106, 1107). Again, though, the decision makes clear that the ALJ ascribed limited weight to this opinion by Dr. Drabick and, as discussed herein, the ALJ's determination that plaintiff was not disabled throughout the pre-1 April 2007 period is supported by substantial evidence.

This is not an instance in which discussion of particular evidence by the ALJ is needed to confirm he considered it. As discussed in Section G below, plaintiff's counsel at the hearing summarized most of Dr. Drabick's letter to ALJ at the start of the hearing. *Id.* 1199-1202. Indeed, the summary was so detailed that the ALJ found it necessary to limit the presentation. *See id.* 1201. During his colloquy with counsel, the ALJ noted, "I can read the letter." *Id.* 1201. Thus, by virtue of the hearing alone, the ALJ was aware of this specific piece of evidence and familiar with its contents.

Moreover, his decision indicates repeatedly that he has considered all the evidence in the record. *See id., e.g.,* 614 ("After careful consideration of all the evidence, the [ALJ] concludes . . . ."), 620 ¶ 5 ("After careful consideration of the entire record, the undersigned finds . . . ."), 621

18

("After considering the evidence of record, the undersigned finds . . . ."). The ALJ represents that he has considered specifically the opinions of the treating physicians. *See id.* 622 ¶ 5 ("The undersigned has considered the objective medical evidence, the claimant's subjective complaints and the opinions of the treating, examining and non-examining physicians . . . ."). Dr. Drabick's 7 May 2008 letter falls within the scope of these representations.

The court concludes that the weight the ALJ accorded the opinions of Dr. Drabick was in accordance with law. Plaintiff's challenge to the ALJ's decision on this basis should accordingly be rejected.

### D.     Evaluation of Plaintiff's Allegations of Pain

As noted, this court is not permitted to make its own assessment of the credibility of a claimant's allegations of pain and other symptoms, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig,* 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Id.* at 594-95 (citing 20 C.F.R. §§ 404.1529(b), 416.929(b)). Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Craig,* 76 F.3d at 595 (citing 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1)). If the ALJ does not find plaintiff's statements to be credible, the "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *4 (2 July 1996); *accord Dean v. Barnhart,* 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p).

Here, the ALJ correctly recited the two-step process he was to follow. Tr. 620. Then, as to the first step, he found that plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms she alleges. *Id.*

At the second step, he found that plaintiff's "statements concerning the intensity, persistence and limiting effect of these symptoms are not credible prior to April 1, 2007, to the extent they are inconsistent with the [RFC] assessment." *Id.* 621. One basic explanation he provides is that "[t]he records do not support the level of severity alleged by the claimant prior to April 1, 2007." *Id.*

He next discusses numerous findings from the medical records supporting this determination. For example, the ALJ notes that on 19 December 2005 neurosurgeon Timothy B. Garner, M.D. found that a cervical MRI of plaintiff was essentially normal, although plaintiff had seen him because of severe pain. *Id.* 621, 815. Dr. Garner found that there was nothing to explain her persistent pain. *Id.* 621, 815. The ALJ also explained that on 13 June 2005 pain specialist Ralph Gertsch, M.D. found that plaintiff had mild cervical degenerative disc disease based on his comparison of two prior MRI scans. *Id.* 621, 852. On 14 February 2006, the ALJ states, orthopaedist Robert T. Wyker, M.D. found with respect to plaintiff's shoulder pain that she had only mild rotator cuff tendonitis and that surgery was not warranted. *Id.* 621, 866. Additionally, the ALJ notes that on 13 February 2007 Dr. Drabick reported that plaintiff's allegations of pain seemed disproportionate to objective findings on an MRI. *Id.* 621, 1112. The ALJ recites other medical findings as well to explain his credibility determination. *Id.* 621-22.

He also relies on evidence of plaintiff's activities of daily living. Specifically, he points out that on 18 July 2006 plaintiff reported to consulting psychiatrist Stephen R. Levitt, M.D. that, notwithstanding her current contention that she is unable to do activities of daily living, she was

20

doing her own laundry, personal care, and some cooking, dishwashing, sweeping, mopping, and vacuuming. *Id.* 621, 884.

Thus, the ALJ provided specific reasons for his credibility finding and these reasons are supported by evidence in the record. *See* Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *4. The explanation provided is sufficiently specific to make clear the weight he gave to plaintiff's allegations of pain. *See id.*

Plaintiff contends that the ALJ's explanation is deficient because he picked a few isolated references as the basis for his determination. In fact, though, as the references themselves indicate, there is recurrent evidence to support the ALJ's determination.

Plaintiff also contends that the ALJ took the evidence he cites out of context. For example, she faults the ALJ for purportedly ignoring the detailed findings from the December 2005 cervical MRI of plaintiff, which shows a multiplicity of conditions. But it is precisely this MRI that Dr. Garner characterized as essentially normal, as the ALJ stated.

Plaintiff also contends that the ALJ took out of context Dr. Drabick's statement about the disproportionality of plaintiff's allegations of pain in relation to certain objective findings because the same office visit note substantiates her need for treatment for pain. Specifically, the note indicates that Dr. Drabick determined that she should be continued on her prescription pain medication and recommended that she be evaluated by a pain specialist and undergo chronic pain management. Tr. 1112.

These additional findings, though, do not vitiate Dr. Drabick's finding regarding the disproportionality of plaintiff's pain. They are simply some of the additional evidence of record bearing on the level and effect of the pain plaintiff was experiencing that the ALJ had the task of

21

evaluating. Such additional evidence includes the 7 May 2008 statement by Dr. Drabick, in which he makes further findings about plaintiff's pain and to which plaintiff cites in challenging the ALJ's determination. "Simply because claimant can identify other evidence in the record supporting his alleged impairments does not diminish the ALJ's analysis." *Best v. Astrue*, No. 5:06-CV-301-D, 2008 WL 64687, at *3 (E.D.N.C. 3 Jan. 2008) (citing *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n. 10 (4th Cir.1999)).

Moreover, in light of plaintiff's argument, it bears emphasizing that the issue before the ALJ was not simply whether plaintiff was experiencing pain. Rather, it was ultimately whether the pain had the completely disabling effect on plaintiff that she alleges. And he did not reject entirely plaintiff's allegations of pain. Again, he discounted them only to the extent inconsistent with the RFC he found plaintiff to have prior to 1 April 2007. That RFC, of course, recognized significant limitations on plaintiff's ability to perform work activities.

Plaintiff further argues that the ALJ impermissibly required objective evidence of plaintiff's pain. But the degree of consistency between the level of pain claimed and the objective findings is a proper consideration in evaluating the credibility of the alleged pain. "Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, *and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers*." *Craig*, 76 F. 3d at 595 (emphasis added). The court has considered the other arguments advanced by plaintiff with respect to the ALJ's credibility determination and find them also to be without merit.

22

The court concludes that the ALJ applied the proper legal standards in evaluating plaintiff's allegations of pain and other symptoms, and that his evaluation is supported by substantial evidence of record. Plaintiff's challenge to this portion of the ALJ's decision should accordingly be rejected.

## E.    Determination on Listing 1.04

The listings describe for each of the major body systems impairments that are considered severe enough to prevent an individual from performing any work, irrespective of his age, education, or work experience. 20 C.F.R. §§ 404.1525(a), 416.925(a). To meet a listing, an impairment must satisfy all the criteria listed. 20 C.F.R. §§ 404.1525(b)(3), 416.925(b)(3); *accord Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (holding that satisfaction of only some of the criteria is not sufficient). An impairment not meeting a listing may be found to be medically equal to the listing if it at least equals in severity and duration the criteria specified in the listing. 20 C.F.R. §§ 404.1526(a), 416.926(a).

The listing at issue here is Listing 1.04A. It requires a spinal disorder with evidence of nerve root compression resulting in specified conditions. Listing 1.04A. It reads:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)
> . . . .

Listing 1.04A.

In his decision, the ALJ found that the impairments of plaintiff pertinent to Listing 1.04, namely, her degenerative disc disease and rotator cuff tendonitis, did not meet the relevant criteria of that listing. He also found "plaintiff's condition is not manifested in any other clinical findings

23

indicating a level of severity compared to the criteria of . . . [Listing 1.04], and therefore, her condition cannot be found medically equal to [that listing]." Tr. 619 ¶ 4.

Plaintiff argues that the ALJ should have found that her spinal impairments do meet or equal the requirements for Listing 1.04A. She contends that medical records show that she has several of the specified disorders of the spine, namely: a herniated nucleus pulposis, spinal stenosis, osteoarthritis, degenerative disc disease, and facet arthritis. As a result of these disorders, plaintiff asserts that, in satisfaction of the A criteria, she has nerve root compression causing distribution of pain, limitation of motion of the spine, weakness, sensory or reflex loss and positive straight leg-raising test. The court disagrees.

Although the ALJ did not identify the specific evidence supporting his determination on Listing 1.04A, the same substantial evidence relating to plaintiff's musculoskeletal impairments that supports the ALJ's determination on plaintiff's RFC also supports his determination on Listing 1.04A. The ALJ's election not to specifically identify the evidence underlying his listing determination was not error because the evidence upon which he relies is otherwise evident from his decision.

This evidence includes, but is not limited to, the report of orthopaedist Leonard D. Nelson, Jr., M.D. on 24 May 2001 that plaintiff was neurologically intact, other than some minor paraspinal muscle tenderness; had a negative straight leg raise; and had good strength of all muscle groups in her lower extremities. Tr. 199, 615-16. On 29 April 2002, Dr. Garner noted that plaintiff was "doing fairly well" from the low back standpoint and that her leg pain was gone. *Id.* 190, 616. On both 22 November 2002 and 22 January 2003, rheumatologist Kyle W. Strader, M.D. found plaintiff to have good range of motion of the upper and lower extremity joints. *Id.* 310, 312, 616. In addition,

24

as discussed, on 19 December 2005, Dr. Garner found an MRI of her cervical spine essentially normal. *Id.* 617, 815.

Supported as it is by substantial evidence of record, the ALJ's determination that plaintiff's musculoskeletal impairments did not meet or equal Listing 1.04A is lawful. Plaintiff's challenge to this determination should accordingly be rejected.

### F.    Application of Grid Rules as to the Period prior to 1 April 2007

Plaintiff contends that the ALJ erred in applying the Medical-Vocational Guidelines for the period prior to 1 April 2007 because she had two non-exertional limitations, chronic pain and depression. As previously stated, if a claimant has non-exertional limitations or cannot perform all or substantially all the exertional demands, the grid rules are not controlling, but instead are used as a framework for decision making, subject to certain exceptions. *See* Soc. Sec. Ruling 83-12, 1983 WL 31253, at *1; Soc. Sec. Ruling 83-14, 1983 WL 31254, at *1.

Plaintiff's contention fails because the ALJ did not give the grid rules controlling effect as to the pre-1 April 2007 period, as her argument posits, but merely used them as a framework. The ALJ explained that if plaintiff had possessed the RFC to perform all or substantially all the requirements of light work, grid rules 202.21 and 202.14 would have directed a finding of "not disabled." Tr. 623. He points out, though, that her capacity was subject to "additional limitations" (*id.* 623)—an obvious reference to the limitation in her RFC, as determined by the ALJ, to SRRTs in a non-production environment and jobs not requiring complex decision making, constant change, or dealing with crisis situations (*id.* 620 ¶ 5). The ALJ accordingly enlisted the assistance of a VE in determining whether there were sufficient jobs in the national economy available to plaintiff. *Id.* 623.

25

Thus, the ALJ used the grid rules solely as a framework for his analysis, as required. Notably, use of the grids as a framework is the same approach the ALJ would have been required to take had he expressly recognized the two non-exertional limitations plaintiff advocates. Plaintiff's challenge to the ALJ's use of the grid rules should accordingly be rejected.

### G. Limitations of Plaintiff's Opening Statement

Plaintiff contends that the ALJ impermissibly limited her counsel's review of Dr. Drabick's 7 May 2008 letter (*id.* 1102-07) during her opening statement at the hearing. She argues that the ALJ's action violated her right to a full and fair hearing. The contention is utterly baseless.

Review of the hearing transcript shows that plaintiff's counsel appeared to be attempting, as part of her relatively lengthy opening statement, to describe to the ALJ the content, item by item, in Dr. Drablick's 7-page 7 May 2008 letter, which she had already submitted for inclusion in the record. *Id.* 1199-1201. The ALJ understandably responded, "You have a limited amount of time to present your case. I can read the letter." *Id.* 1201. He suggested that they begin taking testimony. *Id.* Undeterred, plaintiff's counsel requested leave to say one more thing about the letter. *Id.* 1201. And the ALJ granted her request. *Id.* In closing, counsel stated, among other things, that "I shouldn't have gotten into so much detail." *Id.* 1202. Belying plaintiff's allegations of abusiveness by the ALJ, at an earlier point in the opening, he had allowed her request to keep the record open for two weeks to enable her to check for inclusion of certain exhibits in the case file. *Id.* 1193; *see also id.* 1250-51.

The court finds that in limiting plaintiff's counsel's opening the ALJ acted well within his authority to conduct proceedings before him. *See* 20 C.F.R. §§ 404.944, 416.1444. Plaintiff's challenge to this action by the ALJ should accordingly be rejected.

26

## H.    Limitation of Plaintiff's Cross-Examination of VE

Plaintiff contends that the ALJ violated her right to a full and fair hearing by limiting her cross-examination of the VE. While the court agrees that plaintiff was entitled to a full and fair hearing, *see, e.g., Richardson v. Perales*, 402 U.S. 389, 401-02 (1971), it disagrees that the ALJ violated that right as she contends.

Plaintiff's contention relates to a chart (tr. 1085-86) in a questionnaire (*id.* 1083-89) completed by Dr. Golding, as indicated, a psychiatrist plaintiff began seeing in 2007. The chart shows levels of impairment (*i.e.*, not significantly impaired, moderately impaired, markedly impaired, and extremely impaired) in 20 areas of mental ability. The ALJ did not permit plaintiff's counsel to show the chart to the VE or review each of the listed abilities with the VE. The ALJ offered two basic rationales for his ruling.

One was that the chart dealt with mental impairments, not functional limitations that the VE could use to compare to the functional demands of various jobs and thereby determine the ability of plaintiff to perform such jobs. *Id.* 1246-47. Significantly, the ALJ did give plaintiff's counsel permission to ask the VE about functional limitations based on the impairments shown on the chart, but she declined to do so. *Id.* 1248-50.

The other rationale was that the addition of functional limitations to a hypothetical to the VE would be feckless because the VE had already testified that there would be no jobs available to plaintiff if it were assumed that she could not perform SRRTs. *Id.* 1245-46. The VE had testified to that effect in response to a hypothetical from the ALJ assuming that the plaintiff lacked the ability to maintain concentration, persistence, and pace to perform SRRTs. *Id.* 1241. The VE had also opined that there would be no jobs available in response to a hypothetical by plaintiff's counsel that

27

assumed, among other things, a person "[w]ho has marked deficiencies in social functioning, who experiences deficiencies in concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner in work settings . . . and who experiences episodes of deterioration or decompensation in work or work like settings, which cause the patient to withdraw from the situation or experience exacerbation of signs and symptoms." *Id.* 1242. Plaintiff's counsel based this hypothetical on a portion of a questionnaire (*id.* 1046) completed by Dr. Drabick, which she erroneously suggested at the hearing dealt with only physical limitations. *See id.* 1245.

The court finds that the ALJ's limitation of the cross-examination was not improper. Among other reasons, the justifications given by the ALJ for his ruling were reasoned, and he explained them at length to plaintiff's counsel. They do not reflect arbitrary action.

Further, the ALJ did permit plaintiff's counsel to conduct cross-examination of plaintiff. In addition to the hypothetical discussed, she also posed a hypothetical assuming that plaintiff had "all the limitations, restrictions, and pain alleged in the testimony given [at the hearing]," to which the VE testified there would be no jobs available. *Id.* 1244. Plaintiff's counsel also asked a hypothetical assuming in addition "all the limitations, restrictions, and pain . . . reflected in the documentary evidence in the record," but the ALJ pointed out that the VE was not familiar with the record. *Id.* 1243. The hypotheticals asked by plaintiff to which she obtained a response, together with the hypotheticals asked by the ALJ, provided a seemingly extensive exposition of the relevant opinions of the VE. Indeed, one of the bases for the ALJ's ruling was, in essence, that plaintiff's counsel's proposed hypothetical would be duplicative.

28

Notwithstanding this concern, the ALJ gave plaintiff's counsel permission to ask more hypotheticals, provided they were in what he deemed proper form. Plaintiff's counsel was either unwilling or unable to take advantage of this opportunity.

More basically, plaintiff has not demonstrated that she was prejudiced by the ALJ's ruling. Specifically, she has not shown how the information she sought to obtain would have materially aided her case. As discussed in the next section, the opinions of the VE must be based on the RFC as properly determined by the ALJ. Here, the questioning of the VE elicited her opinion on the availability of jobs based on the RFC found by the ALJ. Plaintiff's counsel's questioning could have been material had it concerned limitations included in the RFC, but about which the VE had not otherwise been questioned. That was not the case, however. For this and the other reasons stated, plaintiff's challenge to the cross-examination of the VE should be rejected.

I.     **Hypothetical to VE**

Plaintiff also contends that the ALJ failed to include all of plaintiff's limitations in the hypothetical posed to the VE. Plaintiff's contention is without merit.

To be helpful, the VE's opinion must be "in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). A hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005). The VE must accept as true the RFC as determined by the ALJ. *Hines v. Barnhart*, 453 F.3d 559, 566 n.5 (4th Cir. 2006).

In this case, the hypothetical presented to the VE by the ALJ adequately reflected the plaintiff's RFC as determined by the ALJ for the period prior to 1 April 2007. The hypothetical posited an individual of the same age, education, and work background as plaintiff who had the

29

exertional capacity for light work, but limited to frequent postural activities (*i.e.*, stooping, crouching, kneeling, and crouching); SRRTs in a non-production environment; and jobs not requiring complex decision making, constant change, or dealing with crisis situations. Tr. 1239. The hypothetical thus matches the RFC determined by the ALJ for the pre-1 April 2007 period, except that it limits plaintiff to frequent postural activities whereas the RFC placed no limit on them. *See id.* 620 ¶ 5. The greater restrictiveness of the hypothetical did not prejudice plaintiff because it would tend, if anything, to reduce the number of jobs plaintiff could perform and thereby lead the VE to understate the jobs available to plaintiff.

Plaintiff's challenge to the hypothetical is based on the complaint that it did not include two additional limitations—namely, that plaintiff could not maintain the concentration, persistence, or pace necessary to perform SRRTs during an 8-hour day and that she could not lift any weight. The VE testified in response to a hypothetical assuming the inability to maintain concentration, persistence, or pace that it would preclude any work (*id.* 1241) and appeared to express the same conclusion assuming the no-lifting limitation (*see id.* 1242-43). For evidence supporting these limitations, plaintiff cites to Dr. Drabick's finding in his 7 May 2008 letter that plaintiff had deficiencies of concentration, persistence, or pace resulting in a frequent failure to complete tasks in a timely manner. *Id.* 1106. She also relies on findings in a 6 August 2002 medical source statement by chiropractor Charles Kubasko, who treated plaintiff from 2001 to 2008, that plaintiff's physical impairments affected her memory and concentration and her ability to perform any work activity on a prolonged or regular basis. *Id.* 206.

The court, of course, has previously discussed at length Dr. Drabick's letter and the 29 April 2007 medical source statement it largely replicates. Dr. Kubasko's opinion regarding plaintiff's

30

memory and concentration could arguably be accorded diminished weight on the grounds that it is outside his specialty area. *See* 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). His broad opinion regarding plaintiff's ability to work appears to be on the ultimate issue of disability and, as discussed, would thereby not be entitled to special weight based on its source. *See* 20 C.F.R. §§ 404.1527(e)(1), (3), 416.927(e)(1), (3).

Based on these considerations, the evidence discussed herein otherwise supporting the ALJ's decision, the additional supporting evidence cited by the ALJ in his decision, and additional evidence constitutes substantial evidence supporting the ALJ's RFC determination. Such additional evidence includes plaintiff's testimony at her initial hearing on 12 January 2004 that her lower back pain had decreased since her back surgery; she walked about a mile and a half each day; still water skied; cleaned house albeit slowly; and did some grocery shopping and some cooking. Tr. 529, 538-40. In addition, Dr. Strader found on 22 November 2002 that plaintiff did not have 11 of 18 fibromyalgia pressure points (*id.* 312), contradicting Dr. Drabick's finding in his 7 May 2008 letter that she had pain in 11 or more pressure points back to 2002 (*id.* 1105). Also, on 18 July 2006, as the ALJ noted, consulting psychiatrist Levitt opined that plaintiff was coherent and logical and that she was able to understand and follow simple instructions. *Id.* 621, 884.

Because plaintiff's RFC for the period prior to 1 April 2007 as determined by the ALJ is supported by substantial evidence, the ALJ did not err by excluding from it and the hypothetical to the VE the additional limitations plaintiff advocates. *See Johnson*, 434 F.3d at 659. Plaintiff's challenge to the hypothetical the ALJ posed to the VE should accordingly be rejected.

### J.    Reliance on Available Jobs beyond Plaintiff's Physical Capacity

Plaintiff contends that the ALJ erroneously found that she could perform two of the three jobs the VE testified she was able to perform, mail clerk and shipping and receiving weigher, because she was unable to lift weight as required for these jobs. She argues that the third job, photocopy machine operator, should be stricken because the ALJ did not include the *DOT* code for it in his decision. Neither contention has any merit.

As discussed, the mail clerk and shipping and receiving weigher jobs require the ability to lift 20 pounds occasionally and 10 pounds frequently. Plaintiff contends that medical records from Dr. Drabick show that plaintiff could not lift any weight. The ALJ properly determined, however, that plaintiff had the RFC to lift this amount of weight. This argument therefore fails.

Plaintiff's request to strike the job of photocopy machine operator also fails. There is no requirement that an ALJ include in his decision DOT codes for the jobs he finds a claimant able to perform, and plaintiff cites to none. Moreover, in this case, the VE did identify the photocopy machine operator job by DOT number. *See* tr. 1240. There accordingly is no ambiguity about the job to which the ALJ was referring. Plaintiff's challenge to the three jobs identified by the ALJ should therefore be rejected in its entirety.

## IV.  CONCLUSION

For the foregoing reasons, the court concludes that the Commissioner's final decision is based on the proper legal standards and is supported by substantial evidence. IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED and the final decision of the Commissioner be AFFIRMED.

32

IT IS ALSO RECOMMENDED (pursuant to footnote 11 herein) that the Clerk be directed to supplement the administrative record filed on 13 January 2010 to include Exhibit 24E, "Statement of Cynthia M. Curring [*sic*]—Attorney, dated 05/23/2008, " a copy of which appears at pp. 44-45 of D.E. 16-1.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 12 day of January 2011.

James E. Gates
United States Magistrate Judge